UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| KENNETH PAUL WELLINGTON, | : | CASE NO. 18-58335-JWC |
| | : | |
| Debtor. | : | |
| | : | |

**APPLICATION TO EMPLOY REAL ESTATE AGENT
UNDER LISTING AGREEMENT**

COMES NOW S. Gregory Hays, Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate of Kenneth Paul Wellington ("**Debtor**"), and moves this Court for an Order authorizing him to employ Keller Williams Realty Intown Atlanta – The Graham Seeby Group and John Prather (collectively, "**Keller Williams**") as listing agent for the Estate (the "**Application**"), and respectfully shows this Court as follows:

1.  On May 1, 2018 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, initiating Case No. 18-58335-JWC (the "**Bankruptcy Case**").

2.  On or about May 18, 2018, Trustee was appointed to the Bankruptcy Case as interim Chapter 7 Trustee under 11 U.S.C. § 701(a)(1).

3.  Trustee conducted and concluded the meeting of creditors on June 19, 2018, pursuant to 11 U.S.C. § 341(a), after which time he became the permanent Chapter 7 Trustee, under 11 U.S.C. § 702(d).

4.  At the commencement of the Bankruptcy Case, the bankruptcy estate was created under 11 U.S.C. § 541(a) (the "**Bankruptcy Estate**"), and the Bankruptcy Estate includes all Debtor's legal or equitable interests in property as of the commencement of the Bankruptcy Case

12401654v1

and any interest in property that the Bankruptcy Estate acquired after commencement of the Bankruptcy Case. 11 U.S.C. § 541(a)(1) and (7) (2018).

5. Trustee filed his *Application to Appoint Attorney for Trustee* [Doc. No. 9] on June 27, 2018, and the Bankruptcy Court entered an *Order* [Doc. No. 10] on June 28, 2018, authorizing the appointment of Arnall Golden Gregory LLP as attorneys for Trustee.

### The Property

6. On his *Schedule A/B: Property* [Doc. No. 1 at page 15 of 54], Debtor scheduled his sole ownership interest in that certain improved real property known generally as 3301 Forrest Hill Drive, Atlanta, Fulton County, Georgia 30354 (the "**Property**").

7. On his *Schedule C: The Property You Claim as Exempt* [Doc. No. 1 at page 21 of 54], Debtor scheduled an exemption in the Property of $19,160.00 under O.C.G.A. § 44-13-100(a)(1).

### Alleged Liens, Interests and Encumbrances

8. On his *Schedule D: Creditors Who Have Claims Secured by Property* [Doc. No. 1 at page 23 of 54], Debtor scheduled one (1) claim on or against the Property in the amount of $196,945.00 in favor of LoanDepot.com.

### Request for Authority to Employ Realtor

9. Based on a thorough inspection, evaluation and comparative marketing analysis by a licensed real estate broker, Trustee has determined that the Property should be marketed for sale at a listing price of $250,000.00. Thus, there is sufficient equity in the Property to benefit the Bankruptcy Estate if the Property were sold.

10. Accordingly, Trustee requests authority from the Court to employ Keller Williams as his listing agent in the proposed sale of the Property under a listing agreement effective through and

including September 30, 2018 (the "**Listing Agreement**"), which may be extended if necessary, starting at a list price of $250,000.00, with a six (6%) percent commission of the selling price. The Listing Agreement is attached hereto, marked as Exhibit "A," and incorporated herein by reference.

11. Any contract for sale of the Property will be subject to Bankruptcy Court approval following the filing of a motion under 11 U.S.C. § 363.

12. The affidavit of John Prather regarding the matters set out in this Application is attached hereto as Exhibit "B" and incorporated herein by reference.

13. Keller Williams does not represent any interest adverse to the Bankruptcy Estate and is a disinterested person as that term is defined under 11 U.S.C. §101(14). Keller Williams has no connection with Trustee or Debtor within the scope of Rule 2014 of the Federal Rules of Bankruptcy Procedure. Out of an abundance of caution, disclosure is made that, prior to the Petition Date, Keller Williams and Debtor entered into a listing agreement for Keller Williams to sell the Property on behalf of Debtor.

14. The employment of Keller Williams as the listing agent to sell the Property pursuant to the terms of the Listing Agreement is in the best interest of the Bankruptcy Estate.

WHEREFORE, Trustee prays that this Court grant authority to employ Keller Williams as his listing agent to sell the Property pursuant to the Listing Agreement and for such other and further relief as is just and proper.

Respectfully submitted this 29th day of June, 2018.

                ARNALL GOLDEN GREGORY, LLP
                *Attorneys for Trustee*

                By:*/s/ Michael J. Bargar*
                Michael J. Bargar
171 17th Street, N.W., Suite 2100      Georgia Bar No. 645709
Atlanta, Georgia 30363-1031          michael.bargar@agg.com
(404) 873-7030

12401654v1

**EXHIBIT "A" FOLLOWS**

dotloop signature verification: [illegible]

# EXCLUSIVE SELLER LISTING AGREEMENT
(ALSO REFERRED TO AS EXCLUSIVE SELLER BROKERAGE AGREEMENT)


GeorgiaREALTORS®

**2018 Printing**

State law prohibits Broker from representing Seller as a client without first entering into a written agreement with Seller under O.C.G.A. § 10-6A-1 et. seq.

## A. KEY TERMS AND CONDITIONS

1. **Exclusive Listing Agreement.** The undersigned seller(s) ("Seller" or "Client") agree to grant and the undersigned broker and its affiliated licensees ("Broker") agree to accept the exclusive right and privilege to show and offer for sale the property described below ("Property") as the agent of the Seller on the terms and conditions set forth in this Agreement.
    a. **Property Identification:** Address: 3301 Forrest Hills Drive
       City Atlanta, County Fulton, Georgia, Zip Code 30354
       Tax Parcel I.D. Number: 14 006600041022
    b. **Legal Description:** The legal description of the Property is [select one of the following below]:
       ☑ (1) attached as an exhibit hereto;
       ☐ (2) the same as described in Deed Book _____, Page _____, et. seq., of the land records of the above county; OR
       ☐ (3) Land Lot(s) _____ of the _____ District, _____ Section/GMD, Lot _____ Block _____, Unit _____, Phase/Section _____ of _____ Subdivision/Development, according to the plat recorded in Plat Book _____, Page _____, et. seq., of the land records of the above county; OR
       ☐ (4) described below if Property is a condominium unit and a full unit legal description is to be used [NOT TO BE USED IF PROPERTY IS A FEE SIMPLE TOWNHOME]:
       Unit _____ of _____ Condominium ("Condominium"), located in Land Lot _____ of the _____ District of _____ County, Georgia, together with its percentage of undivided interest in the common elements of the Condominium, and its interest in the limited common elements assigned to the unit ("Unit"). The Condominium was created pursuant to the Declaration of Condominium for any Condominium ("Declaration"), recorded in Deed Book _____, Page _____, et seq., _____ County, Georgia records ("Declaration"), and shown and delineated on the plat of survey filed in Condominium Plat Book _____, Page _____, _____ County, Georgia records, and on the floor plans filed in Condominium Floor Plan Book _____, Page _____, _____ County, Georgia records.

2. **Listing Period.** The term of this Agreement shall begin on the date of ~~06/13/2018~~ 06/29/2018 ("Starting Date"). The term of this Agreement shall continue through the date of 09/30/2018 ("Ending Date") which is hereinafter referred to as "Listing Period".

3. **Broker's Duties: List Price.** The price at which the Property shall be listed is $ 250,000 ("List Price").

4. **Negotiation.** Seller ☑ does OR ☐ does not authorize the Broker to assist, to the extent requested by Seller, in negotiating the terms of and filling out a pre-printed real estate purchase and sale agreement and/or counteroffer.

5. **Marketing.** Broker agrees to file this listing with the following Multiple Listing Service(s): FMLS, GAMLS

6. **Commission.** [Select one or more of the following below.]
    a. Seller agrees to pay Broker at Closing:
       ☑ 6 (SIX) percent (%) of the sales price;
       ☐ $ _____;
       ☐ (other) _____
    b. Broker agrees to pay cooperating broker, if any,
       ☑ 3 (THREE) % of the sales price of Property;
       ☐ $ _____;
       ☐ (other) _____

7. **Protected Period.** The length of Protected Period, as that term is herein defined, shall be 90 days.

8. **Independent Contractor Relationship.** If there is an affiliated licensee of Broker directly assisting Broker in marketing and selling the Property, said licensee shall be an: ☑ Independent contractor OR ☐ Employee of Broker.

9. **Agency and Brokerage.**
    The following are types of agency relationship(s) NOT offered by Broker:
    ☐ seller agency  ☐ buyer agency  ☐ designated agency  ☐ dual agency  ☑ sub-agency  ☐ tenant agency  ☐ landlord agency

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH John Prather IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2018 by Georgia Association of REALTORS®, Inc.    F1, Exclusive Seller Listing Agreement, Page 1 of 8, 01/01/18

10. **Special Circumstances Approval Must be Obtained.**
    a. **Listing of Property:**
       - ☐ (1) **Bankruptcy:** Seller has filed for bankruptcy protection and this Agreement is made contingent upon the bankruptcy court authorizing the listing of the Property for sale.
       - ☐ (2) **Divorce:** Seller has filed for divorce and this Agreement is made contingent upon the court having jurisdiction over the divorce action authorizing the listing of the Property for sale.
       - ☒ (3) **Other (Please describe):** Seller is a federal bankruptcy trustee who has never seen nor has any knowledge of the property. Seller makes no warranties or representations. Property is being sold as is, where is, and subject to Bankruptcy Court approval.
    b. **Purchase and Sale of Property:**
       - ☐ (1) **Bankruptcy:** Seller has filed for bankruptcy protection. Any purchase and sale agreement for the sale of the Property will need to be conditioned upon the approval of the bankruptcy court.
       - ☐ (2) **Divorce:** Seller has filed for divorce. Any purchase and sale agreement for the sale of the Property will need to be conditioned upon the approval of the court having jurisdiction over the divorce.
       - ☐ (3) **Short Sale:** The sale of the Property will not generate sufficient proceeds to pay off the Broker's real estate commission and all mortgages or liens on the Property. Therefore, the purchase and sale agreement for the sale of the Property will need to be made contingent upon the mortgage lender(s) and other lien holders agreeing to take less than the face amount of what they are owed.
       - ☐ (4) **Seller Not On Title:** Seller does not yet have title to the Property and the purchase and sale agreement for the Property ☐ will or ☐ will not need to be subject to Seller acquiring title to the Property.
       - ☒ (5) **Other (Please describe):** Upon Bankruptcy Court approval of the sale of the Property, Seller will execute a Trustee's Deed conveying title to the Property to the Purchaser(s).

## B. CORRESPONDING PARAGRAPHS FOR SECTION A.

1. **Exclusive Listing Agreement.** Seller represents that Seller has the full authority to enter into this Agreement. This Agreement constitutes the sole and entire agreement between the parties. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement and the terms and conditions herein may not be amended, modified or waived except by the written agreement of Broker and Seller. The failure of the parties to adhere strictly to the terms and conditions of this Agreement shall not constitute a waiver of the right of the parties later to insist on such strict adherence.

2. **Listing Period.**
    a. **Initial Listing Period:** The referenced Listing Period shall be the term of this Agreement and it shall begin on the referenced Starting Date and shall continue through the referenced Ending Date.
    b. **Extension:** If during the term of this Agreement, Seller and a prospective buyer enter into a real estate sales contract or option to purchase contract which is not consummated for any reason whatsoever, then the original expiration date of this Agreement shall be automatically extended for the number of days that Property was under contract.

3. **Broker's Duties to Seller.** Broker's sole duties to Seller shall be to:
    a. Make all disclosures required by law;
    b. Use Broker's best efforts to procure a buyer ready, willing, and able to purchase Property at the List Price (which amount includes the commission) or any other price acceptable to Seller;
    c. Comply with all applicable laws in performing its duties hereunder including the Brokerage Relationships in Real Estate Transaction Act, O.C.G.A. § 10-6A-1 et. seq.; and
    d. If selected in paragraph A.4. above, assist in negotiating terms or filling out pre-printed real estate purchase and sale agreements and/or counteroffers.

4. **Negotiation: Seller's Duties.** Seller represents that Seller:
    a. will cooperate with Broker to sell the Property to prospective buyers and will refer all inquiries concerning the sale of Property to the Broker during the term of this agreement;
    b. will make the Property available for showing at reasonable times as requested by Broker;
    ** c. ~~will provide Broker with accurate information regarding Property (including information concerning all adverse material facts pertaining to the physical condition of Property);~~ and
    d. will comply with all local, state and federal laws applicable to the sale of the Property.
    e. The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form he or she should consult an attorney. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.
    ** Not applicable. See attached Exhibit "A" - Special Stipulations.

5. **Marketing.**
   a. **Generally:** Broker is authorized to market and advertise Property for sale in any media of Broker's choosing, including the Internet and multiple listing services, and attempt to procure buyers for the Property in cooperation with other real estate brokers and their affiliated licensees. Seller acknowledges that in listing the Property in a multiple listing service, all members of multiple listing services and real estate related third parties will have access to Seller's listing information including images and recordings and the right to use all available technology to create, download, store, supplement and manipulate such listing information to assist Seller in the sale of the Property and for tracking and analyzing real estate transactions. As such, Broker may not always have control over aspects of the marketing of the property. Any media created or purchased by Broker to be used in the marketing effort shall not belong to or be the property of the Seller and may not be copied, reproduced, or used by Seller or other third parties without the express written permission of the Broker. Seller warrants that any media provided or paid for by Seller is the property of the Seller and agrees to indemnify the Broker for any claim by a third party related to the use of the provided media. Broker shall be allowed to use Seller provided materials, during the term of this Agreement, with any third-party for the purposes of marketing the property, and Seller acknowledges that Broker shall not be liable to Seller for the continued use of media by third-parties after the termination of the Agreement. Seller agrees not to place any advertisements on the Property or to advertise the Property for sale in any media except with the prior written consent of Broker. Broker is also hereby authorized to place Broker's "For Sale" sign on Property. If the Property is sold or a contract for the sale or exchange of the Property is entered into during the term of this Agreement, the Broker may advertise the Property (including images thereof) in any media of Broker's choosing as being "under contract" while a sale is pending and as being "sold" upon the closing of the Property (except nothing herein shall permit Broker to place a Sold sign on property no longer owned by Seller except with the written permission of the new owner).
   b. **Multiple Listing Service(s):** Broker agrees to file this listing with the above referenced Multiple Listing Service(s) within 48 hours after Seller signs the same (excepting weekends, federal holidays and postal holidays). Seller acknowledges that the MLS(s) is/are not a party to this Agreement and is/are not responsible for errors or omissions on the part of Seller or Broker. Seller agrees to indemnify Service(s) from and against any and all claims, liabilities, damages or losses arising out of or related to the listing and sale of Property. Seller acknowledges that by virtue of listing the Property in MLS(s), all MLS(s) members and their affiliated licensees, will have access to Seller's listing information for the purpose of assisting Seller in the sale of the Property.
   c. **Consent of Seller to be Called:** If Seller is on a "Do Not Call List," Seller expressly consents to Broker calling Seller for any purpose related to the sale of the Property. This paragraph shall survive the termination of this Agreement.
   d. **Lockboxes:** A lockbox may be used in connection with the marketing of Property. There have been isolated instances of reported burglaries of homes on which lockboxes have been placed and for which the lockbox has been alleged to have been used to access the home. In order to minimize the risk of misuse of the lockbox, Broker recommends against the use of lockboxes on door handles that can be unscrewed from the outside or on other parts of the home from which the lockbox can be easily removed. Since others will have access to Property, Seller agrees to either remove all valuables, prescription drugs and/or keys, or put them in a secure place.

6. **Commission.**
   a. In the event that during the term of this Agreement Seller enters into a contract (including an option contract) for the sale or exchange of the Property, or any portion thereof, or for the sale of the ownership interests in the legal entity which owns the Property, with any buyer, Seller agrees to pay Broker's commission at closing (and regardless of whether the closing is during or after the term of this Agreement).
   In addition, Seller agrees to immediately pay Broker the commission referenced above if during the term of this Agreement any of the following events occur:
   (1) Seller defaults under any contract to sell or exchange the Property (including an option contract);
   (2) Without the consent of Broker, Seller and a buyer mutually agree to terminate a contract for the purchase and sale or exchange of the Property (including an option contract); or
   (3) Seller refuses to accept a lawful, bona fide, written offer to purchase the Property meeting the following terms and conditions at a time when the Property is not otherwise under contract:
       (a) The purchase price in the offer, after deducting all fees, costs and contributions to be paid by the Seller (other than the real estate brokerage commission to be paid by Seller and the Seller's payment of ad valorem property taxes through the date of closing) is for at least the full listing price set forth herein and is to be paid in cash or cash equivalent at the closing.
       (b) The offer is not subject to contingencies, conditions precedent, due diligence periods, or required terms other than those set forth herein;
       (c) The offer is not subject to Seller warranties or representations other than: (i) those warranties the Seller agrees to provide in any Seller's Property Disclosure Statement the Seller has filled out and made available to prospective buyers for inclusion in any offer, and (ii) the Seller warranting to convey good and marketable title (which for all purposes herein shall have the same meaning as set forth in the GAR Purchase and Sale Agreement, Form F20) to the Property at closing by limited warranty deed; and
       (d) The date of closing in the offer is not less than thirty (30) days nor more than forty-five (45) days from the offer date.
   Notwithstanding the above, in the event there are multiple offers to purchase the Property, Seller shall not be in breach of this Agreement if the Seller first gives the prospective buyers a reasonable opportunity (not exceeding 10 days from the date of the first offer) to make their best offer to purchase the Property.
   b. Broker shall share this commission with a cooperating broker, if any, who procures the buyer of Property by paying such cooperating broker at closing the percent (%) of the sales price of Property referenced above OR the flat amount referenced above. In addition, cooperating brokers are expressly intended to be third-party beneficiaries under this Agreement.
   c. **Survival:** The commission rights of Broker and the commission obligations of Seller set forth herein shall survive termination or expiration of this Agreement.
   d. In the event Seller has unilaterally terminated a Listing Agreement on the Property with a different broker, Seller acknowledges that in addition to Seller's commission obligations to Broker set forth herein, Seller may also owe a real estate commission to the previous broker in certain circumstances.

7. **Protected Period.** If Seller during the Protected Period, as that term is hereinafter defined, sells, options to sell, contracts to sell ownership interests in the legal entity which owns the Property or contracts to sell or exchange Property to any buyer who made an offer on, was introduced to, visited, received information on, inquired about, or otherwise learned of the Property during the term of this Agreement, as a result of the efforts of the Broker, then Seller shall pay the commission referenced above to Broker at the closing of the sale or exchange of Property to said buyer. The term "Protected Period" shall refer to the period with the number of days referenced above following the earlier of either: (a) the expiration of this Agreement; or (b) the date that the Agreement is terminated upon the mutual, written consent of the Broker and Seller. If this Agreement is terminated by Seller without the express, written consent of Broker, the Protected Period shall be the time period referenced above plus the number of days that remained on the term of this Agreement at the time it was terminated early without the express, written consent of Broker. In such event, the Protected Period shall commence on the date this Agreement was terminated early without the express written consent of Broker. For the purposes of this Agreement, the term "buyer" shall include buyer, all members of the buyer's immediate family, any legal entity in which buyer or any member of buyer's immediate family owns or controls, directly or indirectly, more than ten percent (10%) of the shares or interests therein, and any third party who is acting under the direction or control of any of the above parties. Notwithstanding the above, no listing commission shall be paid to Broker if this Agreement has either expired or been terminated upon the mutual, written consent of Broker and Seller and the Property is sold or contracted to be sold to a prospective buyer by or through another licensed broker with whom Seller has signed an exclusive right to sell listing agreement. The commission rights and obligations set forth herein shall survive the termination or expiration of this Agreement.

8. **Independent Contractor Relationship.** This Agreement shall create an independent contractor relationship between Broker and Seller. Broker shall at no time be considered an employee of Seller.

9. **Agency and Brokerage.**
   a. **Broker's Policy on Agency:** Unless Broker indicates above that Broker is not offering a specific agency relationship, the types of agency relationships offered by Broker are: seller agency, buyer agency, designated agency, dual agency, sub-agency, landlord agency, and tenant agency.
   b. **Dual Agency Disclosure:** *[Applicable only if Broker's agency policy is to practice dual agency.]* If Seller and a prospective buyer are both being represented by the same Broker, Seller is aware that Broker is acting as a dual agent in this transaction and consents to the same. Seller has been advised that:
      (1) In serving as a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;
      (2) Broker will disclose all adverse, material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from either client which is not otherwise required to be disclosed by law;
      (3) Seller does not have to consent to dual agency and, the consent of the Seller to dual agency has been given voluntarily and the Seller has read and understands the brokerage engagement agreement.
      (4) Notwithstanding any provision to the contrary contained herein, Seller hereby directs Broker, while acting as a dual agent, to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.
      (5) Broker or Broker's affiliated licensees will timely disclose to each client the nature of any material relationship with other clients other than that incidental to the transaction. A material relationship shall mean any actually known personal, familial, or business relationship between Broker and a client which would impair the ability of Broker to exercise fair and independent judgment relative to another client. The other party whom Broker may represent in the event of dual agency may or may not be identified at the time Seller enters into this Agreement. If any party is identified after the Agreement and has a material relationship with Broker, then Broker shall timely provide to Seller a disclosure of the nature of such relationship.
   c. **Designated Agency Disclosure:** *[Applicable only if Broker's agency policy is to practice designated agency.]* Seller does hereby consent to Broker acting in a designated agency capacity in transactions in which Broker is representing Seller and a prospective buyer. With designated agency, Broker assigns one or more of its affiliated licensees exclusively to represent the Seller and one or more of its other affiliated licensees exclusively to represent the prospective buyer.
   d. Unless specified below, Broker has no other known agency relationships with other parties which would conflict with any interests of Seller (except that Broker may represent other buyers, sellers, landlords, and tenants in buying, selling or leasing property).

10. **Special Circumstances.**
    a. The sale of Property is contingent upon a third party's approval as indicated above. It shall be Seller's responsibility to seek to fulfill any contingency or condition selected herein, if any, and ensure that the purchase and sale agreement is made subject to any such contingency or condition.
    b. Broker agrees to keep confidential all information which Seller asks to be kept confidential by express request or instruction unless Seller permits such disclosure by subsequent word or conduct or such disclosure is required by law. Seller acknowledges, however, that Buyer and Buyer's broker may possibly not treat any offer made by Seller (including its existence, terms and conditions) as confidential unless those parties have entered into a Confidentiality Agreement with Seller.
    c. Broker may not knowingly give customers false information.
    d. In the event of a conflict between Broker's duty not to give customers false information and the duty to keep the confidences of Seller, the duty not to give customers false information shall prevail.

6. **Miscellaneous.**
   a. **Arbitration:** ~~All claims arising out of or relating to this Agreement and the alleged acts or omissions of any or all the parties hereunder shall be resolved by arbitration in accordance with the Federal Arbitration Act 9 U.S.C. § 1 et. seq. and the rules and procedures of the arbitration company selected to administer the arbitration. Upon making or receiving a demand for arbitration, the parties shall work together in good faith to select a mutually acceptable arbitration company with offices in Georgia to administer and conduct the arbitration. If the parties cannot mutually agree on an arbitration company, the company shall be selected as follows. Each party shall simultaneously exchange with the other party a list of three arbitration companies with offices in Georgia acceptable to that party to administer and conduct the arbitration. If there is only one (1) arbitration company that is common to both lists, that company shall administer and conduct the arbitration. If there is more than one arbitration company that is common to both lists, the parties shall either mutually agree on which arbitration company shall be selected or flip a coin to select the arbitration company. If there is not initially a common arbitration company on the lists, the parties shall repeat the process by expanding their lists by two each time until there is a common name on the lists selected by the parties. The decision of the arbitrator shall be final and the arbitrator shall have authority to award attorneys' fees and allocate the costs of arbitration as part of any final award. All claims shall be brought by a party in his or her individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. The arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. Notwithstanding anything to the contrary contained herein, this agreement to arbitrate shall not apply to: (1) any claim regarding the handling and disbursement of earnest money; and (2) any claim of Broker regarding the entitlement to or the non-payment of a real estate commission hereunder.~~   Continued at the bottom of this page...
   b. **Referrals:** Seller hereby authorizes Broker to refer Seller to another real estate licensee or broker for brokerage or relocation services not related to the sale of the Property. Seller acknowledges and agrees that Broker may receive a valuable consideration for the referral.
   c. **No Imputed Knowledge:** Seller acknowledges and agrees that with regard to any property which Seller intends to sell, there shall be no knowledge imputed between Broker and Broker's licensees or between the different licensees of Broker. Broker and each of Broker's licensees shall be deemed to have only actual knowledge of such properties.
   d. **Governing Law:** This Agreement may be signed in multiple counterparts and shall be governed by and interpreted pursuant to the laws of the State of Georgia.
   e. **Fair Housing Disclosure:** Seller acknowledges that Broker is committed to providing equal housing opportunities to all persons and that Seller and Broker are obligated to comply with state and federal fair housing laws in selling the Property. Seller and Broker agree not to discriminate in the sale of the Property on the basis of race, color, religion, national origin, sex, familial status, disability, sexual orientation or gender identity.
   f. **Time of Essence:** Time is of the essence of this Agreement.
   g. **Notices:**
      (1) **Communications Regarding Real Estate Transactions:** Client acknowledges that many communications and notices in real estate transactions are of a time sensitive nature and that the failure to be available to receive such notices and communications can have adverse legal, business and financial consequences. During the term of this Agreement, Client agrees to remain reasonably available to receive communications from Broker.
      (2) **Notices between Broker and Client Regarding this Agreement:** Client and Broker agree that communications and notices between them regarding the terms of this Agreement shall be in writing, signed by the party giving the notice, and may be delivered in person or to any address, e-mail address and/or facsimile number to the person to whom the communication or notice is being given specifically set forth in this Agreement. It is the intent of the parties that those means of transmitting notices for which a party has not provided an address or number shall not be used for receiving notices and communications. For example, if a party has not provided an e-mail address in this Agreement, it shall mean that the party is not accepting notices or communications sent by this means.

7. **Beware of Cyber Fraud:** Fake e-mails attempting to get you to wire money to criminal computer hackers are increasingly common in real estate transactions. Under this scam, computer hackers fraudulently assume the online identity of the actual mortgage lender, closing attorney and/or real estate broker with whom you are working in the real estate transaction. Posing as a legitimate company, they then direct you to wire money to them. In many cases, the fake e-mail is sent from what appears to be the authentic web page of the legitimate company responsible for sending the wiring instructions. You should use great caution in wiring funds based solely on wiring instructions sent to you by e-mail. Independently verifying the wiring instructions with someone from the company sending them is the best way to prevent fraud. In particular, you should treat as highly suspect any follow up e-mails you receive from a mortgage lender, closing attorney and/or real estate broker directing you to wire funds to a revised account number. Never verify wiring instructions by calling a telephone number provided along with a second set of wiring instructions since you may end up receiving a fake verification from the computer hackers trying to steal your money. Independently look up the telephone number of the company who is supposed to be sending you the wiring instructions to make sure you have the right one.

**Continuation of Paragraph 6. a.**

subject to the jurisdiction of the United States Bankruptcy Court, Northern District of Georgia, Atlanta Division, in re Kenneth Paul Wellington, Case No. 18-58335-JWC.

8. **Brochures.** Brochures referenced herein are prepared courtesy of the Georgia Association of REALTORS®. The recommendations are general in nature and are not intended to be exhaustive. Some of the recommendations may not apply to specific properties. Sellers are encouraged to consult with experts and professionals of their own choosing to ensure that they are protected.

**The following Brochures and/or Exhibits have been received by the Seller(s):** (Check all that apply. Any box not checked means the Seller(s) has not received that brochure or other consumer information)

- ☐ GAR B1 – Protect Yourself When Selling a House
- ☐ GAR B6 – What Buyers and Sellers Should Know About Short Sales and Distressed Properties
- ☐ GAR B9 – The ABC's of Agency
- ☐ GAR B10 – Mold Pamphlet
- ☐ GAR B11 – Lead Based Paint Pamphlet
- ☐ GAR F19 – Retainer Fee Exhibit

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph, shall control:

~~Notwithstanding the terms described Section 6, the Seller shall be solely responsible for a $495 flat fee portion of the commission owed for contract compliance and coordination. All parties understand this commission portion is retained at closing for the processing of all contracts and documents and is not shared with cooperating brokers.~~

~~Seller may terminate this Listing Agreement at any time by giving notice in writing to Listing Broker and delivering a check made payable to Keller Williams Realty for $495.~~

Subject to Bankruptcy Court approval of the sale of the Property, Seller will pay a six percent (6%) commission of the Purchase Price.

Additional Special Stipulations ☐ are or ☒ are not attached.

BY SIGNING THIS AGREEMENT, SELLER ACKNOWLEDGES THAT: (1) SELLER HAS READ ALL PROVISIONS AND DISCLOSURES MADE HEREIN; (2) SELLER UNDERSTANDS ALL SUCH PROVISIONS AND DISCLOSURES AND HAS ENTERED INTO THIS AGREEMENT VOLUNTARILY; AND (3) SELLER IS NOT SUBJECT TO A CURRENT LISTING AGREEMENT WITH ANY OTHER BROKER.

## SELLER'S ACCEPTANCE AND CONTACT INFORMATION

**1 Seller's Signature** [signed]
S. Gregory Hays, as and only as Trustee in Bankruptcy
for the Estate of K. Wellington, Case #18-58335-JWC
Print or Type Name                    Date

Suite 555, 2964 Peachtree Road, Atlanta, GA 30305
Seller's Address for Receiving Notice

(404) 926-0060
Seller's Phone Number:    ☐ Cell    ☐ Home    ☐ Work

Seller's E-mail Address

**2 Seller's Signature**
Print or Type Name                    Date

Seller's Address for Receiving Notice

Seller's Phone Number:    ☐ Cell    ☐ Home    ☐ Work

Seller's E-mail Address

Additional Signature Page (F151) ☐ is ☒ is not attached.

## BROKER / BROKER'S AFFILIATED LICENSEE CONTACT INFORMATION

KELLER WILLIAMS REALTY INTOWN ATLANTA
Listing Broker

*John Prather* [signed]
dotloop verified
06/27/18 5:56PM EDT
QELZ-1OIF-6T36-DLJT
Broker/Affiliated Licensee Signature

JOHN PRATHER
Print or Type Name                    Date

404-944-0747            404-551-5621
Licensee's Phone Number    Fax Number

JOHNPRATHER@GSGREALTY.COM
Licensee's E-mail Address

363955
GA Real Estate License Number

Atlanta REALTORS® Association
REALTOR® Membership

KWIT01              H-43887
MLS Office Code    Brokerage Firm License Number

404-541-3500        404-541-3535
Broker's Phone Number    Fax Number

621 NORTH AVE NE SUITE C50
Broker's Address

ATLANTA, GA 30308

RECEIPT OF A COPY OF THIS AGREEMENT IS HEREBY ACKNOWLEDGED BY SELLER.
The above Agreement is hereby accepted _____ o'clock _____ .m. on the date of _____.

# Exhibit "A"

## Special Stipulations

The following Special Stipulations, if conflicting with any preceding paragraph, shall control:

1. The "Seller" is S. Gregory Hays, as and only as Trustee in Bankruptcy for the Estate of Kenneth Paul Wellington, Chapter 7 Case No. 18-58335-JWC.

2. Seller's Property Disclosure Statement and Georgia Official Wood Infestation Report. **Not applicable. Property to be sold "as is" "where is".**

3. Notwithstanding anything contained in this Agreement to the contrary, the parties acknowledge that the sale of the real property which is the subject of this Agreement and all terms, conditions, warranties and representations contained herein, including Broker's 6% sales commission are subject to approval, and not binding without the approval, of the United States Bankruptcy Court, Northern District of Georgia, Atlanta Division in Case No. 18-58335-JWC in accordance with Title 11 of the United States Code.

4. All parties agree that the closing shall take place no later than fifteen (15) days after the date the Court's Order approving the sale has been entered on the Bankruptcy Court's Docket.

5. The closing attorney shall be such attorney as selected by Seller.

6. Seller will not make repairs to the property.

7. Seller will not provide a survey. Purchaser shall be responsible for all expenses of the survey, in the event that Purchaser desires to obtain a survey.

8. Trustee and Listing Broker, have no specific knowledge and make no representations concerning the condition of the Property. Buyer understands that the Property is being sold "AS IS".

9. Seller warrants that Seller has title to the Property described herein or will have full authority to enter into this Agreement upon order of the Bankruptcy Court and that any contract for sale of the Property is subject to and contingent upon approval of the U.S. Bankruptcy Court, Northern District of Georgia, Atlanta Division, in Chapter 7 Case No. 18-58335-JWC, and Seller will execute a Trustee's Deed conveying the Property to Purchaser free and clear of all liens, interests and encumbrances.

_____   _____
Seller                                           Agent

12401432v1

**EXHIBIT "B" FOLLOWS**

Case 18-58335-jwc    Doc 12    Filed 06/29/18    Entered 06/29/18 16:31:52    Desc Main
Document      Page 13 of 16

12401654v1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 18-58335-JWC |
| | ) | |
| KENNETH PAUL WELLINGTON, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |

## REAL ESTATE BROKER'S VERIFIED STATEMENT PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2014 AND 5002

The undersigned hereby declares under penalty of perjury:

1. I am a licensed real estate agent in the State of Georgia and am affiliated with Keller Williams Realty Intown Atlanta - The Graham Seeby Group ("**Keller Williams**"), with offices located at 621 North Avenue NE, Suite C50, Atlanta, Georgia 30308. Brokerage Firm License Number is H-43887.

2. Keller Williams has been asked to represent S. Gregory Hays, as Chapter 7 Trustee for the bankruptcy case of Kenneth Paul Wellington ("**Debtor**"), in the value evaluation and sale of that certain improved real property located at 3301 Forrest Hills Drive, Atlanta, Fulton County, Georgia 30354 (the "**Property**").

3. Keller Williams is experienced at providing opinions as to the valuation and at handling the sales of real property in the State of Georgia.

4. Keller Williams is to be compensated for its services as a real estate broker at 6% of the selling price of the Property, subject to Court approval after notice and hearing, which notice and hearing may be provided with the notice of the relevant sale of the Property.

5. Except as set forth herein, neither I nor Keller Williams has a connection within the scope of Bankruptcy Rule 2014 with Debtor, the creditors, or any party in interest in this bankruptcy case, or any attorney or accountant thereof.

12401406v1

6. Except as set forth herein, neither I nor Keller Williams, Inc. has a connection within the scope of Bankruptcy Rule 2014 with Debtor, the creditors, or any party in interest in this bankruptcy case, or any attorney or accountant thereof. Disclosure is made that Keller Williams and I represented Debtor as Debtor's real estate agent with respect to the Property after Debtor's filing the instant bankruptcy case.

7. Neither I nor Keller Williams are related to or have any connection within the scope of Bankruptcy Rules 2014 or 5002 with any Judge of the United States Bankruptcy Court, Northern District of Georgia. Moreover, neither I nor Keller Williams are related to or have any connection within the scope of Bankruptcy Rules 2014 or 5002 with any attorney, employee, or agent of the Office of the United States Trustee.

8. To the best of my knowledge, information, and belief, Keller Williams and I are disinterested persons as that term is defined under 11 U.S.C. § 101(14).

Dated this __29__ day of June, 2018.

_____
John Prather, Licensed Real Estate Agent
Georgia Real Estate License No. 363955

12401406v1

## CERTIFICATE OF SERVICE

This is to certify that I have mailed a copy of the foregoing **APPLICATION TO EMPLOY REAL ESTATE AGENT UNDER LISTING AGREEMENT** by depositing in the United States mail a copy of same in a properly addressed envelope with adequate postage affixed thereon to assure delivery to:

Office of the U.S. Trustee
362 Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, GA  30303

S. Gregory Hays
Hays Financial Consulting, LLC
2964 Peachtree Rd, NW, Suite 555
Atlanta, GA 30305

John Prather
Keller Williams Realty Intown Atlanta
The Graham Seeby Group
621 North Avenue NE
Suite C50
Atlanta, GA 30308

Kenneth Paul Wellington
3301 Forrest Hills Drive
Atlanta, GA 30354-1200

Eric E. Thorstenberg
Eric E. Thorstenberg, Attorney at Law
Suite 101
333 Sandy Springs Circle
Atlanta, GA 30328

This 29th day of June, 2018.

/s/ Michael J. Bargar
Michael J. Bargar
Ga. Bar No. 645709

12401654v1